UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ERNST J.,

                Petitioner,

        -against-

JAMES L. STONE, Commissioner,
New York State Office of Mental Health,
et al., RICHARD BENNETT, Executive
Director, Mid-Hudson Forensic
Psychiatric Center,

                Respondents.
------------------------------------------------------X

MEMORANDUM of DECISION

03-CV-2805

For Petitioner:
    Dennis B. Feld, Esq.,
    Sidney Hirschfeld, Esq., and
    Lisa Volpe, Esq.
    Mental Hygiene Legal Service
    Second Judicial Department
    170 Old Country Road
    Mineola, New York 11501

For Respondents:
    Charles J. Hynes, District Attorney, Kings County
    By David C. Kelly, Assistant District Attorney, of Counsel
    350 Jay Street
    Brooklyn, New York 11201

    Eliot Spitzer, Attorney General of the State of New York
    By Marc A. Konowitz, Assistant Attorney General, of Counsel
    120 Broadway
    New York, New York 10271

DEARIE, District Judge.

    Petitioner, a chronic schizophrenic, pled not guilty to assault by reason of mental disease or defect. Upon a court determination that he did not require inpatient care, he was discharged

subject to an order of conditions under New York Criminal Procedure Law § 330.20. Several years later, while still under the order of conditions, petitioner was hospitalized after threatening to sexually assault a female social worker. He was ultimately recommitted to a psychiatric facility under New York Criminal Procedure Law § 330.20(14). By petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner challenged the constitutionality of his recommitment. Petitioner's application was denied, and the petition was dismissed by this Court's order dated May 18, 2005. The reasons follow.

## Background

### I. Criminal Charges and Plea

Petitioner suffers from chronic schizophrenia and has a history of psychiatric hospitalization. Following a course of inpatient treatment at Bellevue Hospital in late 1990, he was referred to an outpatient rehabilitation program. He was discharged from the outpatient program on February 21, 1992. Once unsupervised, he stopped taking his medication. Within a week, on February 27, 1992, petitioner attacked an elderly man. He had been hearing voices and believed that the man was the devil and was going to kill him. Petitioner inflicted serious injuries including significant bite wounds to the victim's hand and genitals. As a result, one of the victim's fingers was partially amputated, and stitches were required to close the open wounds. Following the attack, petitioner was involuntarily committed to Bellevue. Thereafter, he was released to the Bellevue outpatient program and was ultimately placed in Pacific House in Brooklyn, a residential treatment center where he received psychiatric treatment five days a week.

For the February 27, 1992 attack, petitioner was charged with assault in the first degree,

assault in the second degree, and burglary in the second degree. On April 7, 1993, pursuant to New York Criminal Procedure Law § 220.15, the New York Supreme Court accepted petitioner's plea of not responsible by reason of mental disease or defect to assault in the second degree.

## II. Statutory Scheme

Under New York Mental Hygiene Law, a person cannot be involuntary committed to a hospital for care and treatment in civil proceedings absent proof by clear and convincing evidence that the person is mentally ill and poses a danger to himself or others. Different procedures apply for involuntary commitment of persons charged with a crime and adjudged not responsible by reason of mental disease or defect ("NRRMDD") under New York Criminal Procedure Law ("CPL"). Following a verdict or a plea[1] of NRRMDD, the NRRMDD defendant is required to submit to a psychiatric examination. CPL § 330.20(2). The court then holds an initial hearing to determine whether the defendant suffers from a "dangerous mental disorder," is "mentally ill" but does not suffer from a "dangerous mental disorder," or is not "mentally ill." CPL § 330.20(6). The state bears the burden of establishing the defendant's mental condition "to the satisfaction of the court," i.e., by a preponderance of the evidence. See CPL § 330.20(6); People v. Escobar, 61 N.Y.2d 431, 439-40 (1984). If the NRRMDD defendant is found to have a "dangerous mental disorder," the court must order the defendant committed to a secure facility for care and treatment. CPL § 330.20(6).

---

[1] Before accepting a NRRMDD plea, the court must be satisfied that each element of the charged crime would be established beyond a reasonable doubt at trial and must find that the affirmative defense of lack of criminal responsibility by reason of mental disease or defect would be proved by a preponderance of the evidence. CPL § 220.15.

3

Under the statute, "dangerous mental disorder" means "defendant currently suffers from a 'mental illness' as that term is defined" under the Mental Hygiene Law, and "that because of such condition he currently constitutes a physical danger to himself or others." CPL § 330.20(1)(c). "Mentally ill" means "defendant currently suffers from a mental illness for which care and treatment as a patient, in the in-patient services of a psychiatric center . . . is essential to such defendant's welfare and that his judgment is so impaired that he is unable to understand the need for such care and treatment." CPL § 330.20(1)(d). If the NRRMDD defendant is found not to have a "dangerous mental disorder" but to be "mentally ill," the court must order the defendant committed to the custody of the Commissioner of the New York State Office of Mental Health (the "Commissioner") and issue an order of conditions. CPL § 330.20(7). The defendant is committed as a civil patient, and all further proceedings for retention, conditional release, or discharge are governed by the Mental Hygiene Law. Id. If the NRRMDD defendant is found not to have a "dangerous mental disorder" and not to be "mentally ill," he must be discharged, either unconditionally or subject to an order of conditions. Id.

Generally, the order of conditions is "an order directing a defendant to comply with [a] prescribed treatment plan, or any other condition which the court determines to be reasonably necessary or appropriate." CPL § 330.20(1)(o). The order is valid for five years, and "for good cause shown" may be extended. Id. While a NRRMDD defendant is subject to an order of conditions, he may be "recommitted"[2] upon a finding by a preponderance of the evidence that he

---

[2] "Recommitment" applies even to a defendant who was not committed under Criminal Procedure Law at the initial hearing, whether because he was "mentally ill" but not suffering from a "dangerous mental disorder," and therefore subject to an order of conditions and commitment proceedings under Mental Hygiene Law, or discharged subject to an order of conditions. See People v. Stone, 73 N.Y.2d 296 (1989).

4

suffers from a "dangerous mental disorder" pursuant to Criminal Procedure Law. CPL § 330.20(14).

### III. Post-Plea Proceedings and Petitioner's Mental Condition

Following his NRRMDD plea, in June 1993, petitioner was examined by two psychiatrists pursuant to an examination order of the court. See CPL § 330.20(2). The psychiatrists opined that petitioner was schizophrenic but at the time of their examination was not suffering from a "dangerous mental disorder" and was not "mentally ill" as defined under CPL § 330.20. According to the psychiatrists, petitioner required psychiatric treatment that could safely be provided in his outpatient setting at Pacific House. At petitioner's initial commitment hearing on June 1, 1994, the New York Supreme Court determined he was not suffering from a "dangerous mental disorder" and was not "mentally ill." Accordingly, petitioner was not committed. See CPL § 330.20(6) & (7). Pursuant to CPL § 330.20(7), petitioner was discharged subject to a five-year order of conditions expiring on June 1, 1999. Among other conditions, the order required that petitioner remain at Pacific House and receive psychiatric treatment five days a week.

Petitioner was arrested in 1996 on charges of criminal trespass and harassment. He pled guilty to harassment in the second degree and was sentenced to conditional discharge. In 1997, petitioner was arrested again on charges of criminal trespass. He was not prosecuted. Following each arrest, he was admitted to Brookdale Hospital.

In 1999, prior to the expiration of the order of conditions, petitioner's mental condition deteriorated rapidly. On May 24, 1999, after taking a female social worker hostage and threatening her with sexual assault, petitioner was admitted on an emergency basis to Interfaith

Hospital for a period not to exceed fifteen days pursuant to Mental Hygiene Law § 9.39. In addition, the Commissioner applied to extend petitioner's CPL § 330.20 order of conditions for a period not to exceed five years. Thereafter, petitioner's involuntary confinement was extended for the balance of sixty days pursuant to Mental Hygiene Law § 9.27.

On July 13, 1999, petitioner was transferred to Kingsboro Psychiatric Center. At Kingsboro, petitioner attacked other patients several times. Kingsboro applied to the New York Supreme Court for a six-month order of retention pursuant to Mental Hygiene Law § 9.33. Following a hearing, by order dated August 12, 1999, the court ordered a three-month period of retention upon clear and convincing evidence that petitioner was mentally ill and posed a substantial threat of physical harm to himself or others. In addition, with the consent of all parties, the court extended the CPL § 330.20 order of conditions for a period of three years.

## IV. Petitioner's Recommitment and Constitutional Challenge

In October 1999, upon Kingsboro's request, the Commissioner sought petitioner's recommitment to a secure facility pursuant to CPL§ 330.20(14) on the grounds that petitioner had a dangerous mental disorder. Petitioner's psychiatric condition showed "marked deterioration with serious potential dangerous behavior." (Pet'r's Ex. D). At the same time, Kingsboro applied again to the New York Supreme Court for an order of retention pursuant to Mental Hygiene Law § 9.33.

Petitioner moved to dismiss the CPL § 330.20(14) recommitment application on federal equal protection and due process grounds. He challenged the constitutionality of subjecting him to recommitment procedures that differed from the civil commitment procedures under New York Mental Hygiene Law. He argued that a NRRMDD defendant found neither suffering from

6

a "dangerous mental disorder" nor "mentally ill" at the initial hearing should no longer be subject to the special recommitment provisions of CPL § 330.20(14). Respondents argued that a NRRMDD defendant discharged subject an order of conditions remains a member of a special class while under the order and may legitimately be subject to a lesser standard of proof than that required for civil commitment. On February 9, 2000, petitioner's motion to dismiss was denied. By order dated July 12, 2000, petitioner was recommitted pursuant to CPL § 330.20(14) to a secure facility.

Petitioner appealed directly to the New York Court of Appeals pursuant to New York Civil Practice Law and Rules ("CPLR") § 5601(b)(2). The Court of Appeals determined that a direct appeal as of right did not lie and transferred the appeal to the Appellate Division. The Appellate Division granted permission to appeal pursuant to CPL § 330.20(21).

On March 18, 2002, the Appellate Division affirmed the recommitment order. The court concluded:

> Defendants who are not guilty by reason of mental disease or defect are "an exceptional class of individuals who may properly be treated somewhat differently from persons subject to civil commitment." The recommitment provisions of CPL 330.20(14) have a direct and substantial relationship with the State's interest in protecting the public safety, safeguarding the rights of insanity acquittees, and providing treatment for those acquittees who suffer from a mental illness.

In re Ernst J., 739 N.Y.S.2d 737, 738 (App. Div. 2002) (internal citations omitted). Petitioner appealed as of right pursuant to CPLR § 5601(b)(1). On June 11, 2002, the Court of Appeals dismissed the appeal, finding that no constitutional question was directly involved. On July 9, 2002, petitioner moved for leave to appeal to the Court of Appeals. The Court of Appeals denied

7

the motion on October 15, 2002. This petition followed on June 2, 2003. Petitioner raises the same federal due process and equal protection challenges to his recommitment under CPL § 320.20(14) that he raised in state court.

## Discussion

### I. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant habeas corpus relief on claims "adjudicated on the merits" in state court only if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). A state court decision is contrary to federal law if the state court applies a rule that contradicts governing Supreme Court precedent or the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-07, 413 (2000). A decision is an "unreasonable application" of federal law if the state court's application of the correct governing Supreme Court precedent is objectively unreasonable. Id. at 409, 413; see also Mask v. McGinnis, 252 F.3d 85, 88-89 (2d Cir. 2001); Francis S. v. Stone, 221 F.3d 100, 109-11 (2d Cir. 2000); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). As interpreted by the Second Circuit, an unreasonable application includes an unreasonable failure "to extend a clearly established, Supreme Court defined, legal principal to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d 36, 45 & n.2 (2d Cir. 2002). However, "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, 529 U.S. at 410. A decision must be both incorrect and unreasonable to be overturned. Id. at

8

411. Nevertheless, "although [s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Mask, 252 F.3d at 89 (quoting Francis S., 221 F.3d at 111) (internal quotations omitted).

## II. Equal Protection and Due Process Claims

In Addington v. Texas, 441 U.S. 418 (1979), the Supreme Court held that to commit an individual in civil proceedings, due process requires proof by clear and convincing evidence of mental illness and dangerousness. However, in Jones v. United States, 463 U.S. 354, 367-68 (1983), the Supreme Court sanctioned the commitment of an insanity acquittee upon proof of mental illness and dangerousness by only a preponderance of the evidence. In permitting commitment upon a lesser burden of proof, the Supreme Court determined that the "concerns critical to [the] decision in Addington are diminished or absent in the case of insanity acquittees" and that, therefore, due process does not require the same standard of proof. Jones, 463 U.S. at 367. In particular, the Supreme Court concluded that because an acquittee "himself advances insanity as a defense and proves that his criminal act was a product of his mental illness" and because "[a] criminal act by definition is not within a range of conduct that is generally acceptable," the risk of confinement on the basis of "some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable" is diminished. Jones, 463 U.S. at 367 (internal quotations and citations omitted) (emphasis in original). As reiterated in Foucha v. Louisiana, 504 U.S. 71 (1992):

> [a verdict of not guilty by reason of insanity] "establishes two

9

> facts: (i) the defendant committed an act that constitutes a criminal offense, and (ii) he committed the act because of mental illness," an illness that the defendant adequately proved in this context by a preponderance of the evidence. From these two facts, it could be properly inferred that at the time of the verdict, the defendant was still mentally ill and dangerous and hence could be committed.

Id. at 76 (quoting Jones, 463 U.S. at 363).

Petitioner claims that because the court determined at his initial hearing that he was neither suffering from a "dangerous mental disorder" nor "mentally ill," there is no constitutional basis for subjecting him to the special recommitment procedures under CPL § 330.20(14). He argues that the determinations at his initial hearing extinguished the presumptions of mental illness and dangerousness that justify the application of a different standard of proof to insanity acquittees under Jones and that, therefore, his recommitment under CPL § 330.30(14) violates the equal protection and due process guarantees of the United States Constitution. Petitioner contends that in denying his constitutional claims, the state court unreasonably failed to extend governing Supreme Court precedent.[3]

---

[3] Petitioner concedes that the state court adjudication is not contrary to clearly established federal law. In Francis S. v. Stone, 221 F.3d 100, 112 (2d Cir. 2000), the Second Circuit analyzed a similar equal protection challenge to the recommitment procedures under CPL § 330.20. It found that the state court's determination in that case that "recommitment of an insanity acquittee upon a finding of a dangerous mental disorder has a direct and substantial relationship with the State's legitimate concern for the potentiality of the deterioration of the acquittee's mental condition and relapse into dangerous behavior" reflected "the essence of the intermediate level of scrutiny that the Supreme Court has applied in similar contexts." Id. (internal quotations and citation omitted) (emphasis in original). In this case, the Appellate Division concluded that "[t]he recommitment provisions of CPL 330.20(14) have a direct and substantial relationship with the State's interest in protecting the public safety, safeguarding the rights of insanity acquittees, and providing treatment for those acquittees who suffer from a mental illness." In re Ernst J., 739 N.Y.S.2d at 738. This determination, too, appears to reflect intermediate scrutiny. It follows, as in Francis S., that the state court decision is not "contrary to" established federal law.

10

This Court cannot conclude on habeas review that it was objectively unreasonable for the state court to reject petitioner's claim. As acknowledged by the Supreme Court in Jones, a verdict of not guilty by reason of insanity establishes that defendant committed a criminal offense because of mental illness. The Court observed: "[i]t comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment." Jones, 463 U.S. at 366. The procedures applicable to NRRMDD defendants embody exactly that common sense principle in providing for extended supervision through an order of conditions and authorizing recommitment under special procedures. An initial hearing determination that a NRRMDD defendant does not require inpatient treatment and can be discharged subject to an order of conditions does not destroy the basis for affording the defendant different procedural protections than those afforded to a civil committee. Indeed, the fact that a NRRMDD defendant who is found at the time of the initial hearing not to have a "dangerous mental disorder" and not "mentally ill" is discharged subject to an order of conditions rather than unconditionally indicates that the court has concluded that defendant's compliance with a prescribed treatment plan is necessary to assure the safety of the public and the defendant himself. The statutory provisions for orders of conditions and recommitment "reflect a legislative judgment that, having concededly once engaged in criminal conduct as a result of mental illness, the insanity acquittee continues to present a serious risk of recurrence of dangerous behavior derived from mental illness." In re Francis S., 87 N.Y.2d 554, 562 (1995). Jones supports this judgment.

The petitioner in Jones was subject to automatic commitment under the District of Columbia Code upon a plea of not guilty by reason of insanity. As previously discussed, the

Supreme Court found that it was constitutionally permissible to commit Jones upon proof by a preponderance of the evidence of mental illness and dangerousness because of his status as an insanity acquittee. In determining whether Jones could be committed for a period longer than he could have been incarcerated if he had been convicted, the Court stated:

> The Due Process Clause requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed. The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous.

Jones, 463 U.S. at 368.

In Foucha, 504 U.S. at 77-8 (1992), the Supreme Court repeated its holding in Jones that "when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." Jones, 463 U.S. at 370. Applying Jones, the Supreme Court invalidated a Louisiana statute that allowed an insanity acquittee who was no longer suffering from a mental disease but continued to be dangerous to be confined in a psychiatric facility. In doing so, the Court stated that because Foucha was no longer mentally ill, "the basis for holding [him] in a psychiatric facility as an insanity acquittee . . . disappeared." Foucha, 504 U.S. at 78. The Court went on to say that "even if his continued confinement were constitutionally permissible, keeping Foucha against his will in a mental institution is improper absent a determination in civil commitment proceedings of current mental illness and

dangerousness." Id.

Petitioner argues that from this statement in Foucha, it must follow that civil commitment procedures are required to recommit a NRRMDD defendant like himself found not to have a "dangerous mental disorder" and not "mentally ill" at the initial hearing. The Court disagrees. Foucha stands for the proposition that it violates due process to confine an individual who is no longer suffering from a mental disease or illness in a psychiatric hospital; in such cases, that particular from of confinement ceases to be appropriate. However, it does not necessarily follow that the justification for applying special recommitment procedures to an insanity acquittee during a supervisory period is destroyed once the insanity acquittee does not require inpatient psychiatric treatment.

Foucha had displayed no evidence of mental illness since he had been committed upon his plea of not guilty by reason of insanity, and it appeared that he had recovered from a temporary drug-induced psychosis. Nevertheless, the state retained Foucha because his anti-social personality rendered him a continuing danger to himself and others. In elaborating upon the inappropriateness of confining Foucha in a mental institution absent a determination of mental illness and dangerousness, the Supreme Court relied on Vitek v. Jones, 445 U.S. 480 (1980), a case in which a state prisoner had been involuntarily transferred to a mental hospital without procedural safeguards including notice and a hearing. The Foucha court noted:

> [W]e held [in Vitek] that a convicted felon serving his sentence has a liberty interest, not extinguished by his confinement as a criminal, in not being transferred to a mental institution and hence classified as mentally ill without appropriate procedures to prove that he was mentally ill. The loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement. Due process requires the nature of commitment to

13

> bear some reasonable relation to the purpose for which the
> individual is committed.

Foucha, 504 U.S. at 78-79. As Justice O'Connor stated in her concurring opinion, "acquittees [cannot] be confined as mental patients absent some medical justification for doing so; in such a case the necessary connection between the nature and purposes of confinement would be absent." Id. at 88. In petitioner's case there is both a reasonable relation between the nature and the purpose of his subjection to an order of conditions and a reasonable relation between the nature and purpose of his recommitment. Since his plea, and in fact well before, petitioner has required inpatient and outpatient psychiatric care. Moreover, unlike the prisoner in Vitek, petitioner has been afforded appropriate procedural safeguards. Petitioner was recommitted after a full hearing upon a court determination, albeit by a preponderance of the evidence, that he suffered from a dangerous mental disorder.

In Francis S. v. Stone, 221 F.3d 100 (2d Cir. 2000), the Second Circuit addressed a similar constitutional challenge by a NRRMDD defendant to recommitment under CPL § 330.20(14). The Court concluded that the state court did not unreasonably refuse to extend Supreme Court principles in denying Francis relief. Petitioner's claim is not sufficiently distinguishable from that of Francis to require a different result. Francis was found "mentally ill" but not suffering from a "dangerous mental disorder" at his initial hearing pursuant to CPL § 330.20(6). He was placed in the Commissioner's custody and committed as a civil patient for four months. As required under CPL § 330.20(7), Francis was subject to an order of conditions. He was released to outpatient care but did not comply with his treatment plan. The Commissioner sought recommitment pursuant to CPL § 330.20(14), but that application was

14

denied upon a finding that although Francis was mentally ill, he was not suffering from a dangerous mental disorder. Petitioner was again remanded to the Commissioner's custody for treatment as a civil committee. A few months later, he was released to outpatient treatment. He again failed to comply with his treatment plan, and the Commissioner again sought recommitment. Like petitioner, Francis argued that the constitutional basis for treating him differently had been extinguished by the determination at the initial hearing that he was not dangerous. He contended that he could not be recommitted absent proof of mental illness and dangerousness by clear and convincing evidence in a civil commitment proceeding. Francis's constitutional claims were rejected, and recommitment was granted by the Appellate Division and affirmed by the Court of Appeals.

On habeas review, the Second Circuit noted that if it were unconstrained by the deference required by 28 U.S.C. § 2254(d), it might rule in favor of Francis's equal protection claim. Francis S., 221 F.3d at 113. However, the Court concluded that "[n]o clearly established federal law, as enunciated by the Supreme Court, required the claim to be upheld." Id. Francis, like the petitioner in this case, relied heavily on Jones and Foucha. The Second Circuit noted that the statement in Jones that "[t]he committed [insanity] acquittee is entitled to release when he has recovered his sanity or is no longer dangerous" was helpful to Francis's claim. Francis S., 221 F.3d at 113 (quoting Jones, 463 U.S. at 368) (internal quotations omitted). However, the Second Circuit found the statement "not decisive, since the Court's holding [in Jones] was limited to the initial commitment procedures, and the Court explicitly declined to adjudicate the applicable release procedures." Id. In Francis S., the Second Circuit also rejected petitioner's contention that the statement in Foucha that petitioner could not be retained in a mental institution "absent a

15

determination in civil commitment proceedings of current mental illness and dangerousness" required that Francis be committed under civil commitment procedures. Francis S., 221 F.3d at 113 (quoting Foucha, 504 U.S. at 78). The Circuit concluded that although the Supreme Court arguably would have struck down the statute in Foucha if Foucha had been mentally ill but no longer dangerous like Francis, Foucha's holding applied only to insanity acquittees who are no longer mentally ill. Id.

Petitioner urges that his case differs from Francis S. in precisely the ways the Second Circuit indicated would provide an appropriate basis for habeas relief. Specifically, petitioner argues that like Jones, his challenge is based on determinations made at an initial hearing. He further argues that like the petitioner in Foucha, he was found to be no longer mentally ill. This Court disagrees. Petitioner's reliance on the statement in Jones that "[t]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous," id. at 368, is as misplaced as Francis's. As observed by the Second Circuit in Francis S., the holding in Jones was limited to the constitutionality of the automatic initial commitment procedures at issue. Petitioner's challenge, like Francis's challenge, relates to recommitment after discharge to outpatient treatment under an order of conditions. The statement in Jones, made in the context of rejecting the argument that an insanity acquittee cannot be committed for a period longer than he could have been incarcerated if convicted, is no more decisive in petitioner's case than it was in Francis's. Moreover, like Francis, petitioner has continuously suffered from a mental illness for which treatment on an outpatient basis has been sufficient at times. Foucha's holding does not dictate that civil commitment procedures must be applied to petitioner any more than to Francis. Accordingly, this Court cannot conclude that it was objectively unreasonable for the state court

16

to reject petitioner's equal protection and due process claims.

## Conclusion

For the reasons stated above, the application for a writ of habeas corpus was denied, and the petition was dismissed. A certificate of appealability shall issue. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       May 31, 2005

RAYMOND J. DEARIE
United States District Judge